560 F.2d 326
 41 A.L.R.Fed. 102, 1977-2 Trade Cases 61,592
 In re Subpoena addressed to Samuel W. MURPHY, Jr., and the
law firm of Donovan Leisure Newton & Irvine, Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
PFIZER INC. et al., Defendants (two cases).
In re Subpoena addressed to Merrell E. CLARK, Jr., and Henry
J. Zafian, and the law firms of Winthrop, Stimson,
Putnam & Roberts and Fish & Neave, Appellants.
 Nos. 76-1916 and 76-1931.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1977.
Decided Aug. 12, 1977.
 
 Peter Dorsey, Minneapolis, Minn. (argued), for appellants Samuel Murphy et al.; Larry L. Vickery, Franklin D. Gray and Stephen J. Snyder, Minneapolis Minn., on brief.
 Sheldon Oliensis, New York City (argued), for appellants Merrell Clark et al.; Gordon G. Budicker, Minneapolis, Minn., on brief.
 John J. Powers, III, U. S. Dept. of Justice, Washington D. C. (argued), for appellee; Donald I. Baker, Asst. Atty. Gen., Barry Grossman, Paul A. Owens, Edward S. Panek and John Galus, Washington, D. C., and Don O. Burley, Minneapolis, Minn., on brief.
 Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.
 GIBSON, Chief Judge.
 
 
 1
 This appeal presents sensitive and far-reaching issues regarding the extent to which an attorney's "opinion work product" is immune from discovery under Fed.R.Civ.P. 26(b)(3).[1] Resolution of these issues requires an interpretation of Fed.R.Civ.P. 26(b)(3) and a review of the policies and competing interests underlying the work product privilege.
 
 
 2
 * In 1969, the Government filed a three-count civil action against Pfizer Inc., Bristol Myers Company, American Cyanamid Company, Olin Corporation, Squibb Corporation and The Upjohn Company. In Count I, the Government is seeking to cancel Pfizer's tetracycline patent on the grounds that it was procured fraudulently. Count II is a common law action of deceit which seeks to hold Pfizer, Cyanamid and Bristol liable for overcharges in excess of $203 million sustained by the Government on direct and federally financed purchases of broad spectrum antibiotics.[2] Count III charges all defendants with various violations of federal antitrust laws.[3] During discovery proceedings in this case, the law firms representing Cyanamid and Bristol were ordered to turn over various documents containing opinion work product to the Government. The validity of this order is the primary issue on this appeal.
 
 
 3
 A skeletal history of this case will aid in placing the legal issues in perspective. In the early 1950's, product patent applications for the broad spectrum antibiotic drug tetracycline were filed by Pfizer, Cyanamid and Bristol. Because of these competing applications, the Patent Office declared "interference" between Pfizer and Cyanamid. This interference proceeding was settled when the parties executed a cross-licensing agreement in which Cyanamid conceded priority to Pfizer's tetracycline application and received a license from Pfizer to market tetracycline. In exchange, Pfizer received a license to use two of Cyanamid's crucial patents in the production of tetracycline.
 
 
 4
 In September 1954, before a patent had been issued on tetracycline, Bristol began producing tetracycline and marketing it in dosage form under its brand name. Cyanamid filed an action against Bristol which charged Bristol with infringing Cyanamid's patents in the production of tetracycline. This Cyanamid-Bristol litigation was settled when Cyanamid granted Bristol a license to use the Cyanamid patents in the manufacture of tetracycline.
 
 
 5
 In October 1954, the Patent Examiner ruled that Pfizer could not patent tetracycline because it lacked novelty. Eventually, however, the Patent Examiner reversed his decision and, in January 1955, issued the patent to Pfizer. On the day the tetracycline patent was issued, Pfizer commenced a lawsuit against Bristol, Squibb and Upjohn, charging defendants with infringing Pfizer's patent. Immediately thereafter, Bristol, Squibb and Upjohn filed an action to secure a declaratory judgment that they were not infringing the Pfizer patent. In 1956, these actions were settled when Pfizer granted licenses to Bristol to produce and sell tetracycline, with royalties paid to Pfizer. In addition, Pfizer issued licenses to Squibb and Upjohn which allowed them to purchase and sell tetracycline, with Pfizer receiving royalties on their net sales.
 
 
 6
 The Government has long viewed defendants' roles in the patenting and marketing of tetracycline with suspicion. The Government believes that Pfizer, Cyanamid and Bristol committed fraud on the Patent Office by suppressing relevant information and filing false and misleading statements in regard to the tetracycline patent applications. The fraud was committed, the Government argues, in order to assure that Pfizer would receive the tetracycline patent and allow Cyanamid and Bristol to share in the monopoly benefits of tetracycline through licensing agreements. The defendants are also accused of violating federal antitrust laws by conspiring to monopolize the tetracycline market. Essentially, the Government argues that the defendants, with full knowledge that the Pfizer tetracycline patent was invalid and unenforceable, settled the various patent interference and infringement proceedings in order to perpetuate their monopoly control over the drug tetracycline. These arguments of the Government were partially successful in a Federal Trade Commission action against, inter alia, Pfizer, Cyanamid and Bristol,[4] but were unavailing in an antitrust criminal case against these companies.[5] The present civil action was filed by the Government in 1969 to recover damages allegedly incurred because of the fraudulent and illegal activities of the defendant pharmaceutical companies.
 
 II
 
 7
 a. The Government's Discovery Motions.
 
 
 8
 Since the institution of this action, the parties have engaged in prolonged and hotly contested discovery proceedings. The primary point of contention between the parties stems from an attempt by the Government to review the files of the three law firms that have represented either Cyanamid or Bristol for the past several years. The law firm of Donovan Leisure Newton & Irvine (Donovan Leisure) has represented Cyanamid since approximately 1939, primarily in antitrust litigation. The firm of Winthrop, Stimson, Putnam & Roberts (Winthrop) and the patent law firm of Fish & Neave served as legal counsel to Bristol in the Federal Trade Commission and criminal proceedings, and presently represent Bristol in this civil litigation.
 
 
 9
 Early in 1971, the Government filed motions seeking to discover legal documents and internal memoranda that were prepared by these law firms on behalf of Bristol or Cyanamid from 1946 to 1956.[6] The scope of the discovery motions was broad and the subject matter of the subpoenaed documents was diverse. Primarily, the Government has requested from the law firms all documents relating to the filing and settlement of Cyanamid's patent infringement action against Bristol; Pfizer's infringement suit against Bristol, Squibb and Upjohn; and the declaratory judgment action filed by Bristol, Squibb and Upjohn against Pfizer. Requests were also made for all documents relating to the preparation and prosecution of tetracycline-related patent applications by Cyanamid and Bristol. Finally, the Government was interested in receiving any materials disclosing what Bristol and Cyanamid knew about tetracycline in the late 1940's and early 1950's.
 
 
 10
 In order to expedite the discovery proceedings, the District Court appointed a panel of three masters to review the numerous documents submitted by the parties and to make preliminary rulings on the Government's discovery motions. In 1971, the law firms of Donovan Leisure, Winthrop and Fish & Neave afforded the masters access to all legal files except those containing strictly internal documents that had not been seen by their clients. Temporarily acquiescing to this limitation on the scope of their search, the masters reviewed the files and withdrew a substantial number of documents.
 
 
 11
 b. The Masters' 1973 Opinions Interpreting Rule 26(b)(3).
 
 
 12
 On June 1, 1973, the masters rendered two decisions delineating the scope of work product immunity afforded the law firms' documents under Fed.R.Civ.P. 26(b)(3). In the first opinion, which dealt with documents not containing the mental impressions or opinions of the attorneys, the masters considered the issue of whether the work product privilege protects documents prepared in anticipation of previous, terminated litigation. They ruled that the work product privilege generally protects only those "documents prepared in anticipation of litigation in the case with regard to which the protection of (Rule 26(b)(3)) is involved." (Citation omitted.) If the documents were prepared in anticipation of terminated litigation, they are protected only if they discuss "substantially the same issues" involved in the present litigation.
 
 
 13
 The second opinion of the masters discussed the discovery of documents that embodied the opinions or thought processes of the attorneys, denoted here as "opinion work product." The masters rejected the arguments of the law firms that opinion work product is absolutely immune from discovery under Rule 26(b) (3). Rather, they adopted a rule allowing discovery of the law firms' opinion work product upon a showing of substantial need and an inability to obtain without undue hardship the substantial equivalent of the material by other means. Based upon their ruling that "no special protection" attaches to these documents, the masters ordered the documents to be turned over to them for in camera inspection.
 
 
 14
 c. The Masters' 1976 "Opinion Work Product" Opinion.
 
 
 15
 Despite these rulings, the law firms adamantly refused to surrender their internal opinion work product to the masters. Finally, after the District Court issued subpoenas to the law firms,[7] the firms capitulated and turned over many of these documents to the masters for in camera review with the understanding that the documents would be returned to them after the masters' inspection. On February 13, 1976, the masters delivered an opinion establishing the standards for their review of the law firms' opinion work product. In formulating these standards, the masters were confronted with a conflict between their two previous decisions of June 1, 1973, which limited the scope of protection of the work product privilege, and the Fourth Circuit's intervening decision in Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730 (4th Cir. 1974), cert. denied, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). In Duplan, the court reached a conclusion directly contrary to the masters' interpretation of the work product doctrine. Specifically, the Duplan court ruled that (1) the work product privilege is not limited to documents prepared in anticipation of pending litigation, but extends to documents prepared in anticipation of unrelated, terminated litigation[8] and (2) opinion work product is absolutely immune from discovery.
 
 
 16
 The masters resolved this conflict by adhering to the standards established in their previous decisions, expressly rejecting Duplan as "wrongly decided". Implicitly acknowledging the problem of disregarding Duplan, the masters constructed four categories of documents, of which only the first two are relevant to this appeal:
 
 
 17
 Category One. Documents that are discoverable under either (the masters') reading of Rule 26 or Duplan.
 
 
 18
 Category Two. Documents discoverable under (the masters') reading of Rule 26 but not discoverable under Duplan.
 
 
 19
 Of the 41 documents that are central to this appeal, the masters placed two in Category One and 39 in Category Two. When counsel refused to turn over these documents to the District Court, the firms and one member of each firm[9] were cited for civil contempt. This appeal followed.[10]
 
 
 20
 The following issues are presented for our consideration on this appeal: (1) does the work product privilege, as codified in Fed.R.Civ.P. 26(b)(3), extend to attorneys' work product that was prepared in anticipation of terminated, unrelated litigation; (2) what is the scope of immunity afforded opinion work product under Rule 26(b)(3); and (3) do opinion work product documents lose whatever immunity they may have if they were prepared in perpetuation of a crime or fraud?[11]
 
 III
 
 21
 In determining whether the work product privilege extends to documents prepared in anticipation of previous, terminated litigation, we must look to the policies underlying the work product doctrine and attempt to define the intended scope of the doctrine. Our discussion must necessarily commence with Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), which, although it does not explicitly resolve the issue, establishes the analytical framework within which we must operate.
 
 
 22
 In Hickman, the Supreme Court undertook the difficult task of reconciling the competing interests of liberalized discovery and the privacy of attorneys' files.[12] The Court acknowledged that an attorney, engaged in the representation of his client, must be allowed a certain degree of privacy so as to be able to discharge his duties to his client responsibly and effectively. "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." 329 U.S. at 511, 67 S.Ct. at 393. If unfettered scrutiny of an attorney's private files were allowed, attorneys would be reluctant to reduce their tentative opinions and thought processes to writing, a practice that would ill-serve clients and the cause of justice. Some restrictions on access to attorneys' work product are necessary to avoid "(i)nefficiency, unfairness and sharp practices" in the delivery of legal services and to prevent a "demoralizing" effect on the legal profession. 329 U.S. at 511, 67 S.Ct. 385.
 
 
 23
 Based upon these postulates, the Court concluded that certain " relevant and non-privileged facts", 329 U.S. at 511, 67 S.Ct. 385, not containing the attorney's mental impressions, may be discovered from an attorney's files if the person seeking production carries the burden of showing that there are "adequate reasons", 329 U.S. at 512, 67 S.Ct. 385, or some " necessity or justification", 329 U.S. at 510, 67 S.Ct. 385, for invading the attorney's privacy. However, the Court did not clearly specify the quantum of proof necessary to carry that burden. Rule 26(b)(3), which codifies Hickman and its progeny, 8 C. Wright & A. Miller, Federal Practice and Procedure § 2023, at 193 (1970) was adopted by the Supreme Court in 1970. The rule establishes a qualified immunity for ordinary work product that which does not contain the mental impressions, conclusions or opinions of the attorney. Such work product is discoverable only upon a showing of substantial need and an inability to secure the substantial equivalent of the items through alternate means without undue hardship. Rule 26(b)(3) provides special protection for an attorney's opinion work product.
 
 
 24
 In view of the Hickman rationale and the policies of Rule 26(b)(3), we conclude that the work product privilege applies to documents prepared in anticipation of terminated litigation.[13] The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party. Counsel should be allowed to amass data and commit his opinions and thought processes to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents merely on request and use them against his client. The work product privilege would be attenuated if it were limited to documents that were prepared in the case for which discovery is sought. What is needed, if we are to remain faithful to the articulated policies of Hickman, is a perpetual protection for work product, one that extends beyond the termination of the litigation for which the documents were prepared. Any less protection would generate the very evils that the Court in Hickman attempted to avoid.[14]
 
 
 25
 An ancillary issue is whether the work product documents prepared in the terminated litigation are protected from discovery only if they discuss issues that are closely related to the issues in the pending litigation. Some courts have expressed the view that the issues in the two cases must be closely related in order to extend protection to the previously prepared documents. E. g., Midland Investment Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134, 138 (S.D.N.Y.1973); see 4 Moore's Federal Practice P 26.64(2) (2d ed. 1976); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 200-01 (1970). However, the court in Duplan, supra, 487 F.2d at 484 n. 15, refused to allow this aspect of the work product privilege to rest on the "technical touchstone" of relatedness. We agree with the conclusion in Duplan. If work product is protected in related, but not unrelated future cases, an attorney would be hesitant to assemble extensive work product materials because of the concern that the materials will not be protected in later, unrelated litigation. The unrelatedness of the subsequent litigation provides an insufficient basis for disregarding the privilege articulated in Hickman and incorporated in Rule 26(b)(3).[15] The mischief engendered by allowing discovery of work product recognized in Hickman would apply with equal vigor to discovery in future, unrelated litigation.
 
 
 26
 Our conclusion that the work product privilege extends to documents prepared in previous, unrelated litigation will not make attorneys' files impregnable. As to ordinary work product, a litigant can secure access to these documents by establishing the relevance of the requested documents, Fed.R.Civ.P. 26(b)(1), and by satisfying the substantial need and undue hardship requirements of Rule 26(b)(3). In our view, Hickman simply dictates that an attorney's work product, whenever prepared, is entitled at a minimum to this qualified privilege.[16]
 
 IV
 
 27
 We must now delineate the scope of protection afforded an attorney's opinion work product under Rule 26(b)(3).[17] The second sentence of that rule provides that, when a court orders discovery of work product materials, it "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Courts have reached divergent conclusions on the extent to which opinion work product is privileged from discovery. Some have allowed discovery upon a showing of "sufficient good cause", United States v. Brown, 478 F.2d 1038, 1041 (7th Cir. 1973), while others have shielded these documents with absolute immunity, Duplan Corp. v. Moulinage et Retorderie de Chavanoz, supra, 509 F.2d at 734; Smedley v. Travelers Insurance Co., 53 F.R.D. 591 (D.N.H.1971); see United States v. Leggett & Platt, Inc., 542 F.2d 655 (6th Cir. 1976).
 
 
 28
 In Hickman, there was an attempt to discover the oral statements made to an attorney by witnesses which, at the time of the discovery request, were in the form of the attorney's "mental impressions or memoranda." 329 U.S. at 512, 67 S.Ct. 385. In a statement that adumbrated the standard embodied in Rule 26(b)(3), the Court concluded: "If there should be a rare situation justifying production of these matters, petitioner's case is not of that type." 329 U.S. at 513, 67 S.Ct. at 395. Based upon the Court's discussion in Hickman, the mental impressions and opinions of attorneys have been "steadfastly safeguarded against disclosure." Advisory Committee's Notes to Rule 26(b)(3), reprinted in 48 F.R.D. 487, 502 (1970).[18] An attorney's thoughts are inviolate, Hickman v. Taylor, supra, 329 U.S. at 511, 67 S.Ct. 385, and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client.
 
 
 29
 It is clear that opinion work product is entitled to substantially greater protection than ordinary work product. Therefore, unlike ordinary work product, opinion work product can not be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. See Fed.R.Civ.P. 26(b) (3). In our view, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. See Hickman v. Taylor, supra. Our unwillingness to recognize an absolute immunity for opinion work product stems from the concern that there may be rare situations, yet unencountered by this court, where weighty considerations of public policy and a proper administration of justice would militate against the non-discovery of an attorney's mental impressions.[19] Absent such a compelling showing, the attorney's opinion work product should remain immune from discovery.[20]V
 
 
 30
 The Government argues that this is a proper case in which to formulate one of the rare exceptions to the opinion work product rule. Drawing an analogy to the attorney-client privilege, the Government argues that documents containing opinion work product should not be immune if they were prepared in perpetuation of a client's criminal or fraudulent activities. According to the Government, there has been a prima facie showing that the law firms' clients, Cyanamid and Bristol, were engaged in committing fraud on the Patent Office and violating federal antitrust law when they sought the advice of the law firms. Therefore, it is argued, the opinion work product of the law firms is not protected by Rule 26(b)(3).
 
 
 31
 The purpose of the attorney-client privilege is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel. Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). A client who, for example, has committed a crime should be allowed to advise his attorney of all relevant, even inculpatory facts without the fear that his attorney may be subsequently required to disclose the substance of the confidential communication and, thereby, prejudice the client's case. But the client, who is the direct beneficiary of the attorney-client privilege, Schwimmer v. United States,232 F.2d 855, 863 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956), can not be permitted to abuse the privilege. The reasons for the privilege "all cease to operate at a certain point, namely where the desired (legal) advice refers not to prior wrongdoing, but to future wrongdoing." 8 Wigmore on Evidence § 2298, at 573 (McNaughton Rev.1969). (Emphasis in original.) From this principle, which was recognized at common law, has emerged the exception that the attorney-client privilege is lost if the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme. Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933); Pfizer Inc. v. Lord, 456 F.2d 545, 548 (8th Cir. 1972); C. McCormick, Law of Evidence § 95 (Cleary ed. 1972); J. Gardner, The Crime or Fraud Exception to the Attorney-Client Privilege, 47 A.B.A.J. 708 (1961). To invoke this exception, there must be a prima facie showing that the client was engaged or planned to engage in illegal or fraudulent activity when he sought the legal advice. See Clark v. United States, supra, 289 U.S. at 15, 53 S.Ct. 465; United States v. Bob,106 F.2d 37, 40 (2d Cir.), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939).
 
 
 32
 Although "the attorney-client privilege and the work product doctrine spring from the same common law origin", In re Grand Jury Proceedings, 473 F.2d 840, 844 (8th Cir. 1973), the work product doctrine under contemporary law "is distinct from and broader than the attorney-client privilege." United States v. Nobles, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975); see In re Grand Jury Proceedings, supra at 845. The items protected by the work product doctrine are not confined to attorney-client confidential communications. Rule 26(b)(3) extends protection to all "documents and tangible things" that are prepared in anticipation of litigation or for trial. Included in this amorphous category are trial preparation documents that contain the fruits of the attorney's investigative endeavors and any compendium of relevant evidence prepared by the attorney. Also protected by Rule 26(b)(3) are the attorney's mental impressions, opinions and legal theories.
 
 
 33
 Whether there is an implied crime or fraud exception to the work product doctrine of Rule 26(b)(3) is presently an unresolved question.[21] Because Rule 26(b)(3) protects a broader and, to some extent, different type of material than the attorney-client privilege, the traditional exceptions to the attorney-client privilege can not be automatically engrafted onto the work product doctrine. A careful analysis must be undertaken to ascertain whether or not the adoption of such an exception would be consistent with the purpose and proper functioning of the work product privilege.
 
 
 34
 If there is a crime or fraud exception to the work product privilege that would justify discovery of opinion work product, the party seeking discovery has the burden of proving at least two elements. It must be established that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing the attorney's opinion work product must bear a close relationship to the client's existing or future scheme to commit a crime or fraud. Applying these standards to the present case we conclude that, if there is a fraud or crime exception to the work product doctrine, the Government has not established its entitlement to the law firms' opinion work product on this basis.
 
 
 35
 a. Documents Prepared by Winthrop and Fish & Neave on Behalf of Bristol.
 
 
 36
 These documents are not discoverable because the Government has not made a prima facie showing that Bristol was engaged in or planning a crime or fraud when the legal advice of Winthrop and Fish & Neave was sought. In a previous appeal arising out of this litigation, we ruled that there was no prima facie showing that Bristol had violated federal anti-trust laws. Pfizer Inc. v. Lord, 456 F.2d 545, 550 (8th Cir. 1972). We find no evidence in the record that would justify a modification of that ruling.
 
 
 37
 In 1973, the masters found that Bristol had failed to provide the Patent Office with relevant information and, thus, there was prima facie evidence that Bristol committed fraud on the Patent Office. In our view, this conclusion lacks evidentiary support. When Bristol and other pharmaceutical companies were charged with violating the Federal Trade Commission Act, there was a plenary hearing before the FTC and Bristol was absolved of any wrongdoing before the Patent Office. American Cyanamid Co., 63 F.T.C. 1747 (1963); see West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710, 716 (D.C.1970).[22] The evidence proffered by the Government and accepted by the masters is ambiguous and controverted. It is not sufficiently convincing to support a prima facie case of fraud on the Patent Office against Bristol. Therefore, none of these documents prepared by Bristol's counsel is discoverable.[23]
 
 
 38
 b. Documents Prepared by Donovan Leisure on Behalf of Cyanamid.
 
 
 39
 The Government has failed to make a prima facie showing that Cyanamid has violated federal antitrust laws. In two trials on the merits, the evidence relied on by the Government was found insufficient to support an antitrust violation against Cyanamid. North Carolina v. Chas. Pfizer & Co., 384 F.Supp. 265 (E.D.N.C.1974), aff'd, 537 F.2d 67 (4th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976) (civil antitrust action); United States v. Chas. Pfizer & Co., 367 F.Supp. 91 (S.D.N.Y.1973) (criminal antitrust prosecution). In light of these dispositions and upon considering the Government's arguments and the record in this case, we conclude that the Government's antitrust evidence against Cyanamid is deficient.
 
 
 40
 However, as we ruled in Pfizer Inc. v. Lord, supra at 550-51, there has been a prima facie showing that Cyanamid committed fraud on the Patent Office. Therefore, assuming there may be a fraud or crime exception, these opinion work product documents would be discoverable only if they bore a close relationship to Cyanamid's fraud on the Patent Office. In order to expedite these discovery proceedings, we have reviewed the Donovan Leisure documents and find no such relationship. Donovan Leisure was retained by Cyanamid as an antitrust counsel and was involved only tangentially with Cyanamid's Patent Office proceedings. Because the Donovan Leisure opinion work product is unrelated to any fraud Cyanamid was committing or planned to commit on the Patent Office, it is not discoverable.[24]
 
 VI
 
 41
 In summary, we hold that (1) the work product privilege extends to documents prepared in anticipation of terminated, unrelated litigation; (2) opinion work product enjoys a nearly absolute immunity and only in rare situations can it be discovered; and (3) if there is a crime or fraud exception to the work product privilege, the Government has failed to establish that it is entitled to discovery of these documents under that exception.
 
 
 42
 Therefore, the documents prepared by Donovan Leisure in its representation of Cyanamid are not discoverable and the orders of contempt against Donovan Leisure and Samuel Murphy are reversed. The 17 documents prepared by Bristol's legal counsel and placed in the masters' Category Two are not discoverable under the standards formulated in this opinion. However, as we have held,[25] the two documents placed in the masters' Category One are discoverable. The Fish & Neave and Winthrop law firms are granted a ten-day leave period in which to deliver these two documents to the Government in order to avoid the contempt penalties established by the District Court. If the documents are delivered within that time, these law firms and the individual contemnors, Henry Zafian and Merrell Clark, Jr., will be purged of contempt.
 
 
 43
 Remanded for further proceedings consistent with this opinion. Costs assessed against appellee.
 
 
 
 [1]
 The portion of Rule 26(b)(3) that is relevant to this case provides:
 Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
 As used throughout this opinion, the phrase "opinion work product" describes those documents containing "the mental impressions, conclusions, opinions, or legal theories of an attorney * * *." Any work product documents that do not fit into this category will be referred to as "ordinary work product."
 
 
 [2]
 On October 29, 1976, the District Court dismissed Count II upon defendants' motion for summary judgment. This court has recently affirmed that judgment. United States v. Pfizer Inc., et al., 560 F.2d 319 (8th Cir. 1977)
 
 
 [3]
 For a review of the pretrial proceedings and the initial aborted trial in this action, see United States v. Lord, 542 F.2d 719 (8th Cir. 1976)
 
 
 [4]
 The eventual outcome of the FTC litigation was that only Pfizer and Cyanamid were found to have committed fraud on the Patent Office and none of the defendants was found liable on the price-fixing charges. The FTC's conclusions were affirmed by the Sixth Circuit. Charles Pfizer & Co. v. FTC, 401 F.2d 574 (6th Cir. 1968), cert. denied, 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969). See generally West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710, 715-18 (S.D.N.Y.1970), aff'd, 440 F.2d 1079 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971)
 
 
 [5]
 The defendants were initially convicted on all counts but the Second Circuit in a divided opinion reversed the conviction and remanded for a new trial. United States v. Chas. Pfizer & Co., 426 F.2d 32 (2d Cir.), modified, 437 F.2d 957 (2d Cir. 1970). An equally divided Supreme Court affirmed the Second Circuit. United States v. Chas. Pfizer & Co., 404 U.S. 548, 92 S.Ct. 731, 30 L.Ed.2d 721 (1972). On remand, the District Court dismissed the indictment. United States v. Chas. Pfizer & Co., 367 F.Supp. 91 (S.D.N.Y.1973)
 
 
 [6]
 The Donovan Leisure documents consist of internal memoranda, notes, summaries, outlines and chronologies prepared for use in then current and anticipated litigation involving Cyanamid. These are characterized by counsel as private working papers of trial lawyers that even include a type of "devil's advocacy" made in an effort to outline the inferences that might be drawn by a "skilled and imaginative" adversary. Fish & Neave documents and the Winthrop documents were also internal memoranda and notes prepared for use by the law firms but were not sent or shown to their client, Bristol
 
 
 [7]
 After being served with subpoenas, Winthrop and Fish & Neave refused to comply and were cited for civil contempt. The contemnors appealed and we held the appeal on the merits to be premature, sustained the validity of the subpoenas and ordered the law firms to submit the documents for in camera review. In re Fish & Neave, 519 F.2d 116 (8th Cir. 1975)
 
 
 [8]
 In reaching this conclusion, the court relied on its prior decision in Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480 (4th Cir. 1973)
 
 
 [9]
 The individual contemnors are Samuel W. Murphy, Jr. of Donovan Leisure, Henry J. Zafian of Fish & Neave and Merrell E. Clark, Jr. of Winthrop
 
 
 [10]
 Before addressing the merits of this appeal, we must consider the Government's argument that we lack appellate jurisdiction to review the District Court's orders of contempt. It is argued that the orders are not "final judgments" and, thus, not appealable. Although orders of civil contempt against parties are not immediately appealable, the traditional rule is that orders of civil contempt against non-parties are final and appealable. International Business Machines Corp. v. United States, 493 F.2d 112, 115 n. 1 (2d Cir. 1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); In re Manufacturers Trading Corp., 194 F.2d 948, 955 (6th Cir. 1952); Fenton v. Walling, 139 F.2d 608, 610 (9th Cir. 1943), cert. denied, 321 U.S. 798, 64 S.Ct. 938, 88 L.Ed. 1086 (1944); 9 Moore's Federal Practice P 110.13(4) at 167 (2d ed. 1975). See United States v. Ryan, 402 U.S. 530, 532, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). Here, the contemnors are not parties in the underlying action and the orders of contempt are appealable. We do not accept the argument that the relationship between the law firms and the parties somehow transformed the firms into de facto parties and, thus, rendered the orders of contempt non-appealable. See In re Fish & Neave, 519 F.2d 116 (8th Cir. 1975); Fenton v. Walling, supra
 
 
 [11]
 Subsequent to the District Court's orders of contempt in this case, there was an unexpected turn of events. The Government, represented by attorneys from the Department of Justice, had argued before the masters that the Fourth Circuit's Duplan opinion was "clearly erroneous and should not be followed", a position ultimately accepted by the masters. Neither the law firms nor the masters were aware that, at approximately the time the Government was making this argument, attorneys for the Department of Justice were representing to the Sixth Circuit that Duplan was correctly decided and that the United States "is presently committed" to the Duplan result. Brief of Government at 41-45, Reply Brief of Government at 2, United States v. Leggett & Platt, Inc., 542 F.2d 655 (6th Cir. 1976). On the present appeal, the Government has forsaken the position it successfully urged upon the masters and expresses unqualified agreement with the Duplan decision. Recognizing that this concession eviscerates the central holding of the masters, the Government argues that the masters' order of discovery can be affirmed on alternate grounds that the documents lost their immunity because they were prepared in perpetuation of a crime or fraud. Despite the Government's concession, we will explicate the basis for our substantial agreement with Duplan and then address the alternate argument. In doing so, we will advance the prolonged discovery proceedings here, provide the masters with the standards to rule on other discovery motions and avoid any future recantations by the Government on this issue
 
 
 [12]
 There was no rule of civil procedure prior to Hickman that dealt specifically with the discovery of an attorney's work product. Operating without an applicable procedural rule or a definitive ruling from the Supreme Court, federal courts before Hickman disposed of work product issues on an ad hoc basis, generating more than sixty often conflicting decisions, "with perhaps a majority of the courts refusing discovery on one ground or another." 4 Moore's Federal Practice P 26.63(4), at 26-365 (2d ed. 1976)
 
 
 [13]
 Although there is some contrary case law, e. g. United States v. International Business Machines Corp., 66 F.R.D. 154, 178 (S.D.N.Y.1974); Honeywell, Inc. v. Piper Aircraft Corp., 50 F.R.D. 117, 119 (M.D.Pa.1970), the weight of modern authority supports this conclusion. United States v. Leggett & Platt, Inc., 542 F.2d 655, 660 (6th Cir. 1976); cert. denied, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977); Duplan Corp. v. Moulinage et Retorderie de Chavanoz, supra, 487 F.2d at 482-85; United States v. O.K. Tire & Rubber Co., 71 F.R.D. 465, 468 n. 7 (D.Idaho 1976); SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 516 (D.Conn.), appeal dismissed, 534 F.2d 1031 (2d Cir. 1976); Midland Investment Co. v. Van Alstyne, Noel & Co., 59 F.R.D. 134, 138 (S.D.N.Y.1973); see 4 Moore's Federal Practice P 26.64(2) (2d ed. 1976); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024, at 200-01 (1970); Note, Discovery of an Attorney's Work Product in Subsequent Litigation, 1974 Duke L.J. 799; Note, Civil Procedure Discovery Work-Product Privilege Extends to Subsequent, Unrelated Litigation, 27 Vanderbilt L.Rev. 826 (1974)
 
 
 [14]
 The English concept of professional privilege, which is related to but not co-extensive with the work product privilege in the United States, see 4 Moore's Federal Practice P 26.63(2.-0) (2d ed. 1976), was noted and discussed by the Supreme Court in Hickman. 329 U.S. at 510, 67 S.Ct. 385 n. 9. The English courts have adopted the general rule of "once privileged, always privileged" which protects documents from discovery after the termination of the litigation for which they were prepared. Pearce v. Foster (1885) 15 Q.B.D. 114 (C.A.); see Duplan Corp. v. Moulinage et Retorderie de Chavanoz, supra, 487 F.2d at 483-84 n. 14; 4 Moore's Federal Practice, supra, at P 26.63(2.-1)
 
 
 [15]
 The masters here did not specifically find that the previous litigation was unrelated to the present litigation. We observe, however, that the tetracycline patent application proceedings and the infringement actions of the early 1950's did not specifically encompass the antitrust and common law deceit issues involved in the instant action
 
 
 [16]
 The last sentence of Rule 26(b)(3) provides that a court, in ordering discovery of work product, shall protect from discovery "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." (Emphasis added.) The masters relied on the phrase "concerning the litigation" to rule that opinion work product is not protected if prepared in anticipation of terminated litigation. Acceptance of this conclusion would give opinion work product less protection than documents not containing an attorney's mental impressions. Viewing Rule 26(b)(3) as a codification of the Hickman rationale, 8 C. Wright & A. Miller, Federal Practice and Procedure § 2023, at 193 & n. 14 (1970), it should be afforded a tolerant interpretation. The Advisory Committee's Notes to this rule recognize that "(t)he courts have steadfastly safeguarded against disclosure of lawyers' mental impressions and legal theories * * *." 48 F.R.D. 487, 502 (1970). Courts should be vigilant to protect the opinion work product prepared in the course of any litigation. Read literally as protecting only the opinion work product generated by the attorney in the case for which discovery is sought, Rule 26(b)(3) would offer no protection for the attorney's opinion work product prepared in connection with another pending case. Such a construction would do violence to the principles and holding of Hickman. We refuse to stultify Rule 26(b)(3) with such a restrictive interpretation. We read that rule to confer on opinion work product the same perpetual protection allowed ordinary work product. See Duplan v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730, 736 (4th Cir. 1974), cert. denied, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975)
 
 
 [17]
 The masters found that all 41 documents involved in this case were opinion work product. Although the Government argues on appeal that some of the documents may be comprised of non-privileged information, we have reviewed the documents and choose not to disturb the masters' finding
 
 
 [18]
 Immediately prior to the Hickman decision, the Advisory Committee on Rules of Civil Procedure included the following language in a proposed amendment to Rule 30:
 The court shall not order the production or inspection of any part of the writing that reflects an attorney's mental impressions, conclusions, opinions or legal theories * * *.
 This rule would have rendered opinion work product absolutely immune from discovery. However, the Supreme court did not adopt the amendment, choosing instead to resolve the work product controversy in the Hickman case. See 4 Moore's Federal Practice P 26.63(6) (2d ed. 1976).
 
 
 [19]
 For example, a court may conclude that opinion work product is not immune if it contains inculpatory evidence of the attorney's own illegal or fraudulent activities. Cf. United States v. Nixon, 418 U.S. 683, 709-13, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The type of proceeding in which discovery is sought is a relevant consideration, In re Grand Jury Proceedings, 473 F.2d 840, 849 (8th Cir. 1973), as is the nature of and necessity for the desired material. The delimitations of any rare exceptions to opinion work product immunity can await future adjudication
 
 
 [20]
 Our ruling that opinion work product is discoverable only in rare and extraordinary circumstances does not shield these materials from judicial scrutiny. An attorney may be ordered to deliver his opinion work product to the court for in camera inspection. In re Fish & Neave, 519 F.2d 116 (8th Cir. 1975); see United States v. Nixon, 418 U.S. 683, 713-14, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The court can categorize the material according to its nature and issue any discovery orders that are justified under Rule 26(b)(3), giving due protection to those portions containing an attorney's mental impressions, opinions and legal theories. Furthermore, our ruling does not undermine the integrity of the fact-finding process. Under Rule 26(b)(3), any relevant facts contained in non-discoverable opinion work product are discoverable upon a proper showing. Advisory Committee's Notes to Rule 26(b) (3), 48 F.R.D. 487, 501 (1975); see 8 C. Wright & A. Miller, Federal Practice and Procedure § 2023, at 194-96 (1970)
 
 
 [21]
 This issue was raised but not resolved in Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215, 1220 (4th Cir. 1976)
 
 
 [22]
 The FTC did find that Pfizer and Cyanamid committed fraud on the Patent Office and that Bristol and others conspired to fix prices. This judgment was vacated and remanded on appeal. American Cyanamid Co. v. FTC, 363 F.2d 757 (6th Cir. 1966). On remand, the FTC did not find that Bristol committed fraud on the Patent Office, nor did it find that Bristol engaged in a conspiracy to fix prices. See Pfizer Inc. v. Lord, supra at 550
 
 
 [23]
 Of the 19 documents prepared by the law firms representing Bristol, the masters placed 17 in Category Two (discoverable under masters' reading of Rule 26 but not discoverable under Duplan ) and two documents in Category One (discoverable under either Duplan or the masters' reading of Rule 26(b)(3)). Based upon our decision in this case, the 17 documents in Category Two are not discoverable because we essentially adopt the Duplan rationale and because the Government has failed to prove that it is entitled to these documents under a crime or fraud exception to the work product doctrine. As to the two documents in Category One, we have reviewed them and find that the masters did not err in ordering discovery of the documents. Therefore, these documents are to be turned over to the Government
 
 
 [24]
 The Government argues that there has been a waiver of the work product privilege by the law firms. It is not disputed by the parties that the work product privilege can be waived. See United States v. Nobles, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). In Nobles, the defense attorney attempted to use an investigator's report, characterized by the Court as work product, to impeach the Government's witnesses. The Court concluded that the work product privilege was waived when the defense elected to make a testimonial use of the material contained in the work product. 422 U.S. 230-40 & n. 14, 95 S.Ct. 2160. The situation here is not analogous to Nobles. Neither Bristol nor Cyanamid has made a testimonial use of the work product in this case. At the initial trial, the Government called an attorney for Fish & Neave and two in-house counsel for Cyanamid and questioned them in regard to the issues presented in this litigation. The Government's argument that this testimony amounted to a waiver of the work product privilege is not even plausible and hence unsupportable. When the opposing party, rather than the party seeking to preserve the work product privilege, calls witnesses and questions them as to events that may be discussed in the work product, there is no waiver under Nobles
 
 
 [25]
 See note 23, supra