In re GRAND JURY INVESTIGATION.

Appeal of Glen J. SCHROEDER, Jr.

No. 86–3664.

United States Court of Appeals, Eleventh Circuit.

May 20, 1987.

Elizabeth L. White, Sheppard and White, P.A., William J. Sheppard, Jacksonville, Fla., for appellant.

Paul J. Moriarty, Asst. U.S. Atty., Orlando, Fla., for appellee.

Before JOHNSON and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

JOHNSON, Circuit Judge:

This case concerns an appeal from an order by the district court compelling testimony pursuant to a grand jury subpoena. We affirm.

Glen Schroeder is the target of a grand jury investigation into charges of tax evasion. Todd Kliston, an accountant and an attorney, prepared Schroeder's income tax returns for several of the years under investigation. Consequently, the grand jury subpoenaed Kliston to testify and produce documents relating to the preparation of Schroeder's income tax returns for those years. Schroeder intervened and moved for a protective order on the grounds of attorney-client privilege and the attorney work product doctrine. Kliston moved for a protective order on the same grounds or, in the alternative, for a motion to compel testimony. The government opposed both motions on the grounds of the crime-fraud exception to both the attorney-client privilege and the attorney work product doctrine. The court, after hearing argument, ordered that Kliston:

(1) answer questions regarding preparation of tax returns as set forth in the subpoena;

(2) respond to any questions regarding disclosure of source of income told to him by Glenn Schroeder;

(3) is not required to answer questions as to advice provided to Glenn Schroeder or any other matter within the attorney-client privilege except the source of income; and

(4) to [sic] submit to the Court for *in camera* review any documents as to which witness Kliston is uncertain must be disclosed pursuant to this Order.

Schroeder now appeals that order.

We observe initially that Schroeder does not challenge the district court's order insofar as it compels Kliston to answer questions regarding the preparation of his tax returns. Nor can he. The attorney-client privilege attaches only to communications made in confidence to an attorney by that attorney's client for the purposes of securing legal advice or assistance. *United States v. White*, 617 F.2d 1131, 1135 (5th Cir.1980); *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed. 2d 123 (1978). Courts generally have held that the preparation of tax returns does not constitute legal advice within the scope of that privilege. *United States v. Lawless*,

709 F.2d 485, 487–88 (7th Cir.1983); *United States v. El Paso,* 682 F.2d 530, 539 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984); *United States v. Davis,* 636 F.2d 1028, 1043–44 (5th Cir. Unit A), *cert. denied,* 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981); *United States v. Gurtner,* 474 F.2d 297, 298–99 (9th Cir.1973); *Canaday v. United States,* 354 F.2d 849, 857 (8th Cir.1966). *But see Colton v. United States,* 306 F.2d 633, 637 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963) ("There can, of course, be no question that the giving of tax advice and the preparation of tax returns ... are basically matters sufficiently within the professional competence of an attorney to make them prima facie subject to the attorney-client privilege."). We agree with the majority rule. Admittedly, the preparation of a tax return requires some knowledge of the law, and the manner in which a tax return is prepared can be viewed as an implicit interpretation of that law. Nevertheless, the preparation of a tax return should not be viewed as legal advice. If a professional accountant prepares a tax return, his client cannot invoke any privilege, for there is no accountant-client privilege under federal law. *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973). A taxpayer should not be able to invoke a privilege simply because he hires an attorney to prepare his tax returns. *Davis,* 636 F.2d at 1043. Thus, any information Schroeder transmitted to Kliston for the purpose of preparing his tax returns, including the sources of his income, is not privileged information.

However, Schroeder does challenge the district court's order insofar as it compels Kliston to testify as to any source of income disclosed by Schroeder in the course of his providing legal advice to Schroeder. He contends that those disclosures are protected by the attorney-client privilege.[1] Obviously a lawyer who prepares a tax return can provide legal advice on tax matters unrelated to the preparation of that return. Such advice falls within the scope of the attorney-client privilege. Also the lawyer might provide legal advice on non-tax matters. Such advice falls within the scope of the attorney-client privilege as well.

██ The government argues that Schroeder failed to prove the existence of such a relationship by failing to put on any evidence that he consulted with Kliston for any purpose other than the preparation of his income tax returns. The person invoking the privilege does bear the burden of proving its existence. *In re Grand Jury Subpoena,* 788 F.2d 1511, 1511–12 (11th Cir.1986); *In re Grand Jury Proceedings in Matter of Freeman,* 708 F.2d 1571, 1575 (11th Cir.1983). However, during the hearing on Schroeder's and Kliston's motions, the government conceded the existence of an attorney-client relationship between Schroeder and Kliston.[2] Having conceded that such a relationship existed, the government cannot argue now that Schroeder failed to prove the existence of that relationship. *Aetna Life Insurance Co. v. Carrillo,* 164 F.2d 883, 884 (5th Cir.1947).

The government also suggests that Schroeder waived any privilege that attached to his disclosures. In support of its position, the government argues that the disclosure of information in a tax return waives the privilege not only to the disclosed data but also as to the details under-

---

**1.** Schroeder does not argue on appeal that any of the disclosures are protected by the attorney work product doctrine.

**2.** In presenting the government's case at that hearing, Mr. Moriarty, Assistant U.S. Attorney, stated:

 Mr. Kliston wears dual hats as a CPA and as an attorney. Part of the information we seek is tax preparation information. That is not protected under the attorney client privilege. However, Mr. Kliston also provided some tax

advice that would be protected and it would invoke the attorney client privilege.

 Given that the government failed to challenge the subsequent statement by Schroeder's counsel that the government had conceded that such a relationship existed, we view the above statement as a concession by the government that such a relationship did exist. Furthermore, we note that the government prepared the district court's order. That order assumes the existence of an attorney-client relationship between Schroeder and Kliston.

lying that information. *Davis*, 636 F.2d at 1043 n. 18; *United States v. Cote*, 456 F.2d 142, 144–45 (8th Cir.1972). *See also Lawless*, 709 F.2d at 487 (no expectation of confidentiality in information transmitted for use on tax return, regardless of whether information actually disclosed on return). The rule to which the government refers, however, concerns only disclosures made in connection with the preparation of tax returns. Consequently, that rule is inapplicable to any disclosures Schroeder made to Kliston in the course of obtaining legal advice unrelated to the preparation of his tax returns.

■ Nevertheless, any such disclosures may not be privileged because Schroeder possibly used Kliston's legal advice to effectuate tax evasion. The attorney-client privilege does not protect communications made in furtherance of a crime or fraud. *See, e.g., In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985) (*Sealed Case II*); *United States v. Dyer*, 722 F.2d 174, 177 (5th Cir.1983); *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1028 (5th Cir. Unit A 1982) (en banc); *United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977). In deciding whether the crime-fraud exception applies to a communication between a lawyer and his client, courts apply a two part test. First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it. *See, e.g., In re International Systems and Controls Corporation Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir.1982); *In re Sealed Case*, 676 F.2d 793, 814–15 (D.C.Cir.

1982) (*Sealed Case I*); *In re Murphy*, 560 F.2d 326, 338 (8th Cir.1977).

■ The first prong is satisfied by a showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed.[3] *Sealed Case II*, 754 F.2d at 399; *In re International Systems*, 693 F.2d at 1242; *Sealed Case I*, 676 F.2d at 815; *In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 203 (5th Cir. Unit A 1981); *In re Murphy*, 560 F.2d at 337. That showing must have some foundation in fact, for mere allegations of criminality are insufficient to warrant application of the exception. *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *In re International Systems*, 693 F.2d at 1242; *In re Grand Jury Proceedings, Vargas*, 723 F.2d 1461, 1467 (10th Cir.1983), *cert. denied*, 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984). That is not to say, however, that motions in opposition to grand jury subpoenas should turn into mini-trials. If courts always had to hear testimony and conflicting evidence on such matters, the rationale behind the prima facie standard—the promotion of speed and simplicity at the grand jury stage—would be lost. Thus, a prima facie showing can be established by a good faith statement by the prosecutor as to what evidence is before the grand jury. *In re Grand Jury Proceedings, Vargas*, 723 F.2d at 1467. *See also In re Grand Jury Proceedings (Twist)*, 689 F.2d 1351, 1352–53 (11th Cir.1982) (denial of stay pending appeal of grand jury subpoena where government's showing based on affidavit of information possessed by grand jury). Furthermore, the district court's determination that the facts set forth by the government establish a prima facie showing of criminal or fraudulent conduct can be reversed only for an abuse of discretion. *See, e.g., In re Grand Jury Subpoenas Duces Tecum*, 773 F.2d 204, 206 (8th Cir.

---

**3.** A few cases indicate that the crime or fraud must be sufficiently serious to justify overriding the attorney-client privilege. *See, e.g., Sealed Case I*, 676 F.2d at 814 n. 84. Most cases, however, do not mention such a requirement, and we have found no case in which application of the crime-fraud exception was denied on that ground. Without deciding whether such a requirement exists and what its contours might be, we note that tax evasion undoubtedly qualifies as a crime sufficiently serious to justify overriding the attorney-client privilege.

1985); *Sealed Case II,* 754 F.2d at 399–400; *Pritchard-Keang Nam Corp. v. Jaworski,* 751 F.2d 277, 280 (8th Cir.1984), *cert. dismissed,* 472 U.S. 1022, 105 S.Ct. 3491, 87 L.Ed.2d 625 (1985); *United States v. Horvath,* 731 F.2d 557, 562 (8th Cir.1984); *In re Grand Jury Proceedings, Vargas,* 723 F.2d at 1467; *Sealed Case I,* 676 F.2d at 813; *In re Berkley & Co.,* 629 F.2d 548, 553 (8th Cir.1980).

■ The second prong is satisfied by a showing that the communication is related to the criminal or fraudulent activity established under the first prong. Courts have enunciated slightly different formulations for the degree of relatedness necessary to meet that standard. *See, e.g., In re International Systems,* 693 F.2d at 1243 ("reasonably relate"); *In re Murphy,* 560 F.2d at 338 ("close relationship"); *In re September 1975 Grand Jury Term,* 532 F.2d 734, 738 (10th Cir.1976) ("potential relationship"). Nonetheless, the different formulations share a common purpose—identifying communications that should not be privileged because they were used to further a crime or a fraud. Furthermore, the determination whether the requested material is sufficiently related to the investigation must take into account that the government does not know precisely what the material will reveal or how useful it will be. *See Sealed Case I,* 676 F.2d at 814 n. 83.

■ Here there is no doubt that the first prong of the test is satisfied. The government submitted a summary of the evidence as well as an I.R.S. Special Agent's summary of the testimony Schroeder provided in an interrogation by that agent. Those submissions reveal that Schroeder reported a moderate income from 1978 to 1984, that he possessed cash in amounts grossly disproportionate to his reported income, and that he purchased assets with values grossly exceeding his reported income. For example, during one of the years under inves-

tigation, Schroeder purchased a house with a value approximately ten times his reported income for that year. He paid the entire purchase price of the house with a cashier's check that he had purchased with cash. On the basis of those facts, the district court did not abuse its discretion in finding that the government had established a prima facie showing that Schroeder willfully made false statements on his income tax returns by failing to report all of his income.[4]

Whether Kliston's advice was related to Schroeder's failure to report income is less certain because, although the government conceded that an attorney-client relationship existed, the record does not specify the matters on which Kliston provided Schroeder legal assistance.[5] However, the requirement that legal advice must be related to the client's criminal or fraudulent conduct should not be interpreted restrictively. Thus, any legal assistance Schroeder received in generating income he did not intend to report must be treated as related to his tax evasion. Likewise any assistance Schroeder received in disposing of income he did not report is related to his tax evasion. There is no suggestion that Kliston provided any legal assistance outside of those categories. We observe further that Kliston need not have been aware that he was assisting Schroeder in evading taxes in order for the crime-fraud exception to apply. *See, e.g., In re Grand Jury Proceedings (Pavlick),* 680 F.2d at 1028–29; *In re Grand Jury Proceedings in Matter of Fine,* 641 F.2d at 203. Therefore, we hold that any legal assistance Kliston may have provided Schroeder in generating income or in disposing of income was related to Schroeder's failure to report income.

Schroeder complains, however, that the disclosure of his sources of income may reveal past criminal activity unrelated to his failure to report income. That com-

---

4. The district court's cursory written order, prepared by the government, did not explicitly mention the crime-fraud exception much less the two part test that determines its applicability. However, as the transcript of the hearing indicates, in ruling from the bench the court was relying on the crime-fraud exception and

the fact that the government had established a prima facie showing of tax evasion.

5. At oral argument, however, Schroeder's attorney indicated that Kliston assisted Schroeder in establishing several off-shore companies.

plaint misconceives the nature of the crime-fraud exception. Communications made in connection with legal assistance related to ongoing or intended criminal or fraudulent activity are not privileged regardless of their content. Thus any of Schroeder's disclosures that fall within the crime-fraud exception are not privileged even though they might reveal past criminal conduct.

Schroeder's other objections to the application of the crime-fraud exception are equally unavailing. He argues that the government's prima facie case rests on mere allegation and not on actual evidence. However, the government did not present mere allegation. Instead, it presented a summary of the evidence before the grand jury and the Special Agent's summary of Schroeder's statements. As indicated, such submissions are an accepted means for establishing a prima facie violation under the crime-fraud exception. Therefore, the prima facie showing that Schroeder was engaged in tax evasion was based on proper grounds.

Schroeder argues also that the material requested—the source of his income—is unrelated to the matter being investigated—his failure to report income. He argues that only the amount of his income, not its source, is relevant to showing the failure to report income. To the extent Schroeder places this argument under the relatedness prong of the crime-fraud exception, he is mistaken. That prong requires only that the communication be related to the crime or fraud the client seeks to perpetrate. It has nothing to do with the communication being related to the matter being investigated. Nonetheless, in *Alexander v. United States*, 138 U.S. 353, 357–60, 11 S.Ct. 350, 351–52, 34 L.Ed. 954 (1891), the Supreme Court arguably held that the crime-fraud exception overcomes the attorney-client privilege only for the prosecution of the specific crime in furtherance of which the allegedly privileged communication was made. At least two courts have characterized that suggestion as dictum and explicitly have rejected it. *See In re Berkley*, 629 F.2d at 554–55; *In re Sawyer's Petition*, 229 F.2d 805, 808–09 (7th Cir.), *cert. denied sub nom. Sawyer v.*

*Barczak*, 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956). Furthermore, *Alexander* apparently has never been used to deny application of the crime-fraud exception. *See In re Berkley*, 629 F.2d at 555 n. 12. However, even if *Alexander* did state a valid rule, it would be inapplicable here. Schroeder is being investigated for tax evasion. Thus any communications Schroeder made in connection with legal advice Kliston may have provided that was related to Schroeder's tax evasion would not remain privileged under *Alexander*.

Furthermore, to the extent Schroeder suggests that a grand jury investigating the willful failure to report income cannot inquire into the target's sources of income, he is mistaken as well. The grand jury possesses broad investigatory powers and, to best exercise those powers, the grand jury should extensively investigate every possible lead. *United States v. Echols*, 542 F.2d 948, 951–52 (5th Cir.1976), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1695, 52 L.Ed.2d 387 (1977); *United States v. Doe*, 541 F.2d 490, 493 (5th Cir.1976). The sources of one's income are valuable clues in determining whether one's reported total income is correct. At any rate, in this Circuit at least, the government need not make a preliminary showing of relevance and need prior to the enforcement of a grand jury subpoena. *In re Grand Jury Investigation*, 769 F.2d 1485, 1487 (11th Cir.1985); *In re Grand Jury Proceedings the Bank of Nova Scotia*, 740 F.2d 817, 825 (11th Cir.1984), *cert. denied sub nom. Nova Scotia v. United States*, 469 U.S. 1106, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985); *In re Grand Jury Proceedings in Matter of Freeman*, 708 F.2d at 1575.

Finally, Schroeder complains that the subpoena requests documents that were not used to prepare his tax returns and supposedly that remain protected by the attorney-client privilege because they do not contain disclosures as to Schroeder's sources of income. However, the district court's order permits Kliston to submit to the court for an *in camera* review any documents he believes remain privileged.

Therefore, to the extent the district court's order compels Kliston to testify as to any source of income disclosed by Schroeder in the course of his providing legal advice that was related to Schroeder's tax evasion, that order is AFFIRMED. If Kliston believes that a particular disclosure remains protected because it was made in connection with legal advice unrelated to Schroeder's tax evasion, he can submit that disclosure to the district court for an *in camera* review.