PFIZER INC., et. al., Defendants-
Petitioners,

v.

Honorable Miles W. LORD, United States
District Judge, Respondent,

and

State of Kansas and Named Plaintiffs in
Forty-Eight Other Cases, Plaintiffs-
Respondents.

No. 71–1581.

United States Court of Appeals,
Eighth Circuit.

Feb. 15, 1972.

See also 8 Cir., 456 F.2d 532.

John A. Cochrane, St. Paul, Minn., for respondents.

Robert Morgan, Atty. Gen., Jean A. Benoy, Deputy Atty. Gen., and Louis W. Payne, Jr., Associate Atty., State of North Carolina, Raleigh, N. C., for respondent, State of North Carolina.

Gibson, Dunn & Crutcher, Los Angeles, Cal., Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., for Pfizer Inc.

Winthrop, Stimson, Putnam & Roberts, New York City, for Bristol-Myers Co.

Faegre & Benson, Minneapolis, Minn., for Bristol-Myers Co., Squibb Corporation and The Upjohn Co.

Donovan, Leisure, Newton & Irvine, New York City, Dorsey, Marquart,

Windhorst, West & Halladay, Minneapolis, Minn., for American Cyanamid Co.

Cravath, Swaine & Moore, New York City, for Squibb Corporation and Olin Corporation.

Covington & Burling, Washington, D. C., for The Upjohn Co.

Before MATTHES, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

PER CURIAM.

We have for consideration a petition, filed by defendants in these cases, seeking a writ of mandamus directing the Honorable Miles W. Lord, United States District Judge for the District of Minnesota, before whom these actions are pending, to vacate and rescind Discovery Order No. 71–15, filed October 1, 1971, *sub nom.* In re Coordinated Pretrial Proceedings In Antibiotic Antitrust Actions, 4–71 Civ. 435. Pursuant to Fed. R.App.P. 21, respondent Lord and the plaintiffs-respondents were authorized to answer or otherwise respond to the petition. Judge Lord declined to file any response, but answers were filed by or on behalf of all plaintiffs.[1]

I

We begin with a discussion of the history of these proceedings. This litigation has its origins in the late 1940's and early 1950's, during which time petitioners were involved in the discovery, patenting, patent licensing, manufacturing, and distribution of certain broad spectrum antibiotic drugs, particularly tetracycline. These activities became the subject of numerous official proceedings, including a Federal Trade Commission proceeding under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 41 et seq., a criminal prosecution under Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., and more than 150 damage actions. The majority of the damage actions have been disposed of by settlement. We are concerned here

---

1. The defendants will be referred to hereinafter as petitioners and the plaintiffs as respondents.

with 49 unsettled and consolidated damage actions, which presently are proceeding through their pre-trial stage in the district court.

Early in August, 1971, and pursuant to agreement of the parties, the district court appointed three attorneys as masters to assist the court in determining the discoverability of a rather large quantity of documents which respondents sought to obtain from petitioners. Petitioners claimed that many of these documents were shielded by the attorney-client privilege.

The masters filed on October 1, 1971, their "opinion . . . on the application of the attorney-client privilege to documents submitted by defendants." The opinion concluded, in summary, as follows:

> " . . . [A]ll Pfizer documents dealing with tetracycline prepared during or after September, 1954, are documents involved in the furtherance of a fraud [on the patent office] and are not protected by the attorney-client privilege.

> " . . . [A]ll Cyanamid documents dealing with tetracycline prepared during or after January, 1954, are documents involved in the furtherance of a fraud [on the patent office] and are not protected by the attorney-client privilege.

> " . . . [A]ll documents of Bristol, Squibb and Upjohn dealing with tetracycline prepared during or after December, 1955, are documents involved in the furtherance of a [violation of the Sherman Act] or tort and are not protected by the attorney-client privilege."

Opinion of Masters at 13, 16, 17. The district court, in the order here at issue, adopted the findings of the masters and directed that documents "which in the Masters' determination are not protected by the attorney-client privilege, will be produced to plaintiffs." In re Coordinated Pretrial Proceedings In Antibiotic Antitrust Actions, *supra.*

The order came under attack by petitioners, but Judge Lord refused to issue the certificate which is a prerequisite to an interlocutory appeal under 28 U.S.C. § 1292(b). Petitioners thereupon instituted this proceeding to challenge the validity and scope of the discovery order. Petitioners contend basically that even if the masters and the district court were correct in finding that *prima facie* showings of fraud and crime had been established, their conclusions regarding discoverability were erroneous because (1) there had been no finding that petitioners had employed the attorney-client relationship to perpetrate or further the fraud or crime, and (2) the language in which the conclusions were cast was overbroad and would require the exposure to respondents of privileged as well as unprivileged documents. Petitioners Bristol, Squibb, and Upjohn complain also that the findings against them lack adequate evidentiary bases.

Respondents counter first by arguing that mandamus is not an appropriate remedy, and next by denying that the law of privileged communications has been applied improperly or that the discovery order is overbroad.

## II

We consider first whether mandamus is available in federal courts as a means of reviewing interlocutory orders, and particularly discovery orders. There appears to be some conflict in this regard among distinguished authorities on federal court procedure. After observing that many states routinely use extraordinary writs for the review of discovery orders, the authors of one treatise state the following:

> "The traditional federal attitude has been that 'as extraordinary remedies they are reserved for really extraordinary cases.' . . . But there has been a general loosening of the federal attitude toward mandamus and the discovery cases have not been unaffected."

8 Wright and Miller, Federal Practice and Procedure § 2006, p. 32 (1971), citing Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947). Another commentator, however, devotes considerable attention to the opinion of the Supreme Court in Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L. Ed.2d 305 (1967), and concludes that this opinion "appears to rechart the area of the availability of mandamus along quite restrictive lines." 9 Moore and Ward, Moore's Federal Practice § 110.28, p. 308 (1970).

The *Will* case arose out of a criminal proceeding in which a federal district court judge had threatened to dismiss indictments unless the government disclosed certain information to the accused. The United States Court of Appeals for the Seventh Circuit issued a writ of mandamus directing that the disclosure order be vacated, but the Supreme Court found mandamus inappropriate and reversed. The office of mandamus, the Court stated, "is not to 'control the decision of the trial court,' but rather merely to confine the lower court to the sphere of its discretionary power." 389 U.S. at 104, 88 S.Ct. at 278.[2]

■ We do not believe that the *Will* opinion requires a denial of mandamus review in this case.[3] We are persuaded, rather, that the claim of privilege asserted by petitioners involves a "really extraordinary" question, and we agree with the following observation from the opinion of the Seventh Circuit Court of Appeals in Harper & Row Publishing Co. v. Decker, 423 F.2d 487, 492 (7th Cir. 1970):

. . . [B]ecause maintenance of the attorney-client privilege up to its proper limits has substantial impor-

tance to the administration of justice, and because an appeal after disclosure of the privileged communication is an inadequate remedy, the extraordinary remedy of mandamus is appropriate.

That decision was affirmed without opinion by a divided Supreme Court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971). Cf. Hartley Pen Co. v. United States District Court, 287 F.2d 324 (9th Cir. 1961). Due consideration of all aspects of this discovery order, in light particularly of possible consequences which review on appeal might prove inadequate to remedy impels us to hold that mandamus is an appropriate vehicle for review of the question raised by the present petition.

### III

This brings us to the crucial question of whether mandamus ought to issue in this case. Our discussion of this question is divided to reflect consideration of four points: (1) the applicable law of privileged communications; (2) propriety of the findings that *prima facie* showings of fraudulent or criminal activity had been made against each defendant; (3) whether there were findings that defendants abused the attorney-client relationship in furtherance of such improper activity; and (4) the breadth of the discovery order.

#### Applicable Law

■ It is a fundamental tenet of the law of evidence that, generally, communications between attorney and client are privileged and not subject to compelled disclosure. Chirac v. Reinicker, 24 U.S. 278, 292, 11 Wheat. 278, 292, 6 L.Ed. 474 (1826); Hunt v. Blackburn, 128 U.S. 464, 470, 9 S.Ct. 125, 32 L.Ed.

**2.** The United States Court of Appeals for the Ninth Circuit has relied upon the *Will* decision twice recently in denying mandamus relief to petitioners seeking avoidance of grand jury subpoenas. City of Los Angeles v. Williams, 438 F.2d 522 (9th Cir. 1971); Lampman v. United States District Court, 418 F.2d 215 (9th Cir. 1969).

**3.** The *Will* case differs from the present case in that the former was a criminal proceeding and the policy against interlocutory appeals is especially pertinent to such proceedings. Further, the party seeking mandamus relief in *Will* was the government, and the Court took note of the limited right of prosecutors to review in criminal cases. 389 U.S. at 96, 88 S.Ct. 269.

488 (1888); Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d 314, 318–322 (7th Cir. 1963); United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358 (D.Mass.1959). The general rule is subject to qualification, however, and· it is with such a qualification that we are concerned in these cases.

The exception to the attorney-client privilege which is involved here has been formulated as follows:

> It has been agreed from the beginning that the privilege cannot avail to protect the client in concerting with the attorney a *crime* or other evil enterprise. This is for the logically sufficient reason that no such enterprise falls within the just scope of the relation between legal advisor and client. (Emphasis in original.)

8 Wigmore, Evidence § 2298, p. 572 (McNaughton rev. 1961). The Supreme Court recognized this exception to the privilege in *dictum* in Clark v. United States, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933), and the United States Court of Appeals for the Second Circuit decided the often cited case of United States v. Bob, 106 F.2d 37 (2nd Cir. 1937), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939), on the basis of this exception. The masters in this case clearly were aware of the state of the law. They referred to the previously mentioned passage from the *Clark* opinion and proceeded to lay down a rule for the guidance of their own deliberations:

> . . . [A]ll documents involved in the furtherance of the crime or tort are not protected by the attorney-client privilege and will be produced to the plaintiffs.

Opinion of Masters at 5–6, 8.

██ Under present law, a party seeking to overcome a claim of attorney-client privilege by invoking the improper purpose exception has the burden of producing sufficient evidence to sustain a finding that the challenged communications were made in furtherance of a crime or tort. Clark v. United States, *supra*, 289 U.S. at 15–16, 53 S.Ct. 465;

Securities & Exchange Commission v. Harrison, 80 F.Supp. 226, 230 (D.D.C. 1948); McCormick, Evidence § 99, p. 201 (1954); *Cf.* Proposed Rules of Evidence for United States Courts and Magistrates, Advisory Committee's Note to Rule 503(d) (1), 51 F.R.D. 315, 365 (1971).

### Masters' findings

The masters pertinently observed in their opinion that the attorney-client privilege long has been recognized at law, and, as noted above, considered the relevant exception to the attorney-client privilege. In attempting to bring the subject order within the exception discussed by the *Clark* Court, the masters stated:

> "On the basis of all the evidence available for consideration, it is the masters' opinion that from a certain point in time * * * a prima facie showing of fraud on the patent office has been made against Pfizer and Cyanamid with respect to their involvement in Pfizer's procurement of its Conover Patent on tetracycline."
>
> * * * * * *
>
> "With respect to Bristol, Squibb and Upjohn, the masters concluded that from a certain point in time * * * a prima facie showing of violation of the Sherman Act with respect to the pricing and marketing of tetracycline has been made. Defendants' conduct may constitute a crime or tort or both." Masters' opinion p. 8.

We consider the above findings in reverse order. Although the masters purportedly found support for their conclusion as to Bristol, Squibb and Upjohn on the basis of "materials properly before them . . .", it seems clear from an analysis of their entire opinion and the briefs filed in support of and in opposition to the discovery order, that the masters relied largely, if not entirely, upon the prior Government proceedings to support their finding that the actions of petitioners Bristol, Squibb and Upjohn constitute a prima facie showing of a violation of the Sherman Antitrust Act.

In our view, an objective appraisal of the prior proceedings fails to show such a prima facie violation.

■ We briefly review the relevant prior proceedings. The Federal Trade Commission filed a complaint under Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45) against all five of the present petitioners. The hearing examiner exonerated all of them, but the full Commission reversed in part the examiner's decision. On appeal, the Sixth Circuit reversed and remanded for further proceedings. American Cyanamid Co. v. F. T. C., 363 F.2d 757 (6th Cir. 1966). The court found that Chairman Dixon of the Commission was disqualified from participating in the hearing. In so holding, the court concluded:

> "Under the facts and circumstances of this case we conclude that the participation of Chairman Dixon in the hearing 'amounted . . . to a denial of due process which invalidated the order under review.'" (Citing cases.) 363 F.2d at 767.

Thus, in our view, the invalidation of the Commission's order rendered it without any force or effect insofar as furnishing a basis for finding a prima facie violation of any law.

On remand, the four Commissioners who heard the matter were divided on the issue of price fixing. Two concluded it was not necessary to the disposition of the case to find the parties were guilty of price fixing. Two Commissioners believed that the evidence substantiated the allegations relating to price fixing. In this posture, no finding was made and the price fixing issue was dismissed.

There remains for consideration the criminal proceeding instituted in the Second Circuit. In 1961, petitioners Pfizer, Cyanamid and Bristol were indicted for conspiring to restrain trade in broad spectrum antibiotics and to monopolize such drugs. Petitioners Squibb and Upjohn were named as co-conspirators, but not as defendants. A jury found the three defendants guilty. The judgment of conviction was reversed and the cause remanded because of trial irregularities. United States v. Charles Pfizer Co., 426 F.2d 32 (2d Cir. 1970). The Supreme Court granted certiorari on May 3, 1971, 402 U.S. 942, 91 S.Ct. 1617, 29 L.Ed.2d 110 and on Jan. 24, 1972 affirmed the decision of the Second Circuit by an equally divided Court. 404 U.S. 548, 92 S.Ct. 731, 30 L.Ed.2d 721. Respondents emphasize that the Second Circuit held in effect that the evidence was sufficient to sustain the conviction because the judgment was reversed on other grounds. Although the argument has some appeal, the fact is that the judgment of conviction has been reversed. Conceivably, on a retrial under proper instructions, the defendants may be acquitted. See State of West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 at 742.

In summary, we are constrained to believe that the masters gave too much weight to the Federal Trade Commission proceedings against Bristol, Squibb and Upjohn, which as noted, have been aborted, and to the criminal prosecution, which, at this time at least, is not conclusive. Therefore, we hold that the prior proceedings do not provide an adequate premise for finding that a prima facie case of violation of the Sherman Act has been established against petitioners Bristol, Squibb and Upjohn. Accordingly, we direct the district court to vacate Discovery Order No. 71–15 as to petitioner Bristol-Myers Company, Squibb Corporation and the Upjohn Company, without prejudice to the court to enter another appropriate discovery order which has for its foundation a proper *prima facie* case of fraud, criminal conduct or tort.

■ We reach a different conclusion as to petitioners Pfizer and Cyanamid. The masters found on the basis of the prior F.T.C. proceeding that a prima facie case of fraud had been made against these two companies. We agree. The F.T.C. found that Pfizer and Cyanamid had committed a fraud on the Patent Office in connection with the issuance of a patent. The Sixth Circuit

affirmed that finding. Chas. Pfizer & Co. v. F.T.C., 401 F.2d 574 (6th Cir. 1968), cert. denied, 394 U.S. 920, 89 S.Ct. 1195, 22 L.Ed.2d 453 (1969). Certainly the final decision of the Court of Appeals for the Sixth Circuit is adequate to form a sound basis for the finding of a prima facie case of fraud.

### Abuse of attorney-client relationship

All petitioners have contended vigorously that the masters' reasoning halted at the point of finding that a *prima facie* showing of fraud or crime had been made, thus falling short of the requisite finding that the attorney-client relationship had been abused. After the petition in this case had been filed, we directed the masters to make a supplementary report clarifying this point and others. It is clear from the supplementary report that the masters did proceed to make the necessary finding of abuse, based upon the reasoning that Cyanamid and Pfizer documents dealing with enforcement of the patent, which was found tentatively to have been procured through fraud, or with production, pricing, marketing, distribution, or licensing of the patented product, were prepared in an attempt to further and perpetuate the original fraud. Based upon the record before us we are not persuaded to hold that this determination is erroneous.

### Breadth of order

It remains for us to consider whether the masters' ultimate conclusions amount to, as petitioners submit, an overbroad, "sweeping denial of defendants' attorney-client privilege," or whether the conclusions are reasonably bottomed on a review calculated to shield from discovery all communications by means of which petitioners legitimately sought or received legal advice.

The ambiguous language in which the masters' conclusions initially were couched was another factor motivating our request for a supplementary report. We are satisfied by the supplemental report, however, that the masters reviewed petitioners' files scrutinously before reporting their findings, and that, despite the broad language of the original opinion, the masters have not recommended, nor has the district court ordered, an indiscriminate baring to respondents of the files of petitioners and their counsel. Thus the masters in their report, after setting forth the test which had been applied to individual documents to determine discoverability, stated the following: "Documents have been marked or segregated in accordance with these criteria . . . The masters will of course work with the parties in explaining the sorting process." Supplementary Report of Masters at 3.

It is evident that the discovery process in these cases is far from completion. Although we decline to issue the writ, directions for carrying out the district court's order should be issued as to Pfizer and Cyanamid. The district court and masters are directed to continue to guard the attorney-client privilege of petitioners Pfizer, Inc., and American Cyanamid by reviewing, if necessary, all *contested documents prior to ruling* on the discoverability of such documents and by ordering the production to respondents only of those documents individually found to have been prepared in perpetration or furtherance of fraudulent activity. The district court is directed further to formulate such additional procedures or guidelines as may be necessary to facilitate the prompt production of unprivileged documents.

### RECAPITULATION

1. Judge Lord is directed to vacate Discovery Order No. 71–15 as to petitioner Bristol-Myers Company, Squibb Corporation and Upjohn Company without prejudice consistent with our views above expressed.

2. Discovery Order No. 71–15 shall remain in force and effect as to petitioners Pfizer, Inc. and American Cy-

anamid Company. Discovery shall be carried out and conducted in accordance with the general directions above set forth.

3. Each of the parties to this cause shall bear its own cost.