In Re Grand Jury Proceedings Involving
Berkley and Company, Inc.
and Others.

In re BERKLEY AND COMPANY,
INC., Appellant.

In Re Grand Jury Proceedings Involving
Berkley and Company, Inc.
and Others.

In re BERKLEY AND COMPANY,
INC., Petitioner.

Nos. 80–1187, 80–1313.

United States Court of Appeals,
Eighth Circuit.

Submitted May 23, 1980.

Decided Aug. 27, 1980.

Roger J. Magnuson, Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., for appellant.

Daniel W. Schermer, Asst. U. S. Atty., Minneapolis, Minn., for petitioner.

Before HEANEY, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

Berkley and Company, Inc. (Berkley) appeals[1] from an order of the district court[2] requiring disclosure to the grand jury of documents Berkley claims are subject to the attorney-client privilege. The government seeks dismissal of the appeal contending that this court lacks jurisdiction because the

---

1. In the alternative, Berkley petitions for review of the district court's order pursuant to the authority granted this court by the All Writs Act, 28 U.S.C. § 1651. Since we hold we have appellate jurisdiction, it is unnecessary that we consider the petition for writ of manda-

mus. Accordingly, the petition in No. 80–1313 is denied.

2. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

order appealed from is not a final appealable order. For reasons stated below we hold that we have jurisdiction to entertain the appeal and affirm the order of the district court subject to the qualifications stated in this opinion.

## I. Procedural History.

Berkley is an Iowa corporation headquartered in Spirit Lake, Iowa, and engaged in the manufacture and distribution of rods and reels and other fishing equipment. Berkley International Company, Ltd. (BIC) is, insofar as relevant to this appeal, a wholly owned subsidiary of Berkley, based in and incorporated under the laws of the Republic of China (Taiwan), and similarly engaged in the manufacture of fishing equipment, primarily for sale to the parent corporation.

Berkley and certain of its employees and officers, and an attorney formerly retained by Berkley (hereinafter, the attorney),[3] are the subjects of a Minnesota federal grand jury investigation into alleged customs violations. The grand jury seeks access to numerous Berkley and BIC company documents which are presently in the government's custody. One group of documents, the "Devine documents," was allegedly stolen by Frank Devine, formerly the General Manager of BIC, who disclosed the documents to the government in 1978. A second group of documents was seized from Berkley's Spirit Lake headquarters pursuant to a search warrant on December 12, 1978.

Berkley initiated the present action by filing several motions with the district court. Berkley moved the court (1) pursuant to Fed.R.Crim.P. 41(e) to suppress evidence seized under the search warrant, (2) in the alternative, to prevent disclosure to the grand jury of documents protected by the attorney-client privilege, and (3) to order the government to provide Berkley with copies of the Devine documents. In March 1979 the court filed an opinion expressly declining to issue preindictment rulings on the motion to suppress and the motion for disclosure of the Devine documents, and ordering *in camera* inspection of all allegedly privileged documents. *In Re Grand Jury Proceedings Involving Berkley & Co.*, 466 F.Supp. 863 (D.Minn.1979).[4]

On January 28, 1980, after *in camera* inspection of the documents, the court filed an order listing some 264 documents it determined to be relevant to the grand jury investigation but not protected by either the attorney-client privilege or the work product doctrine and ordering disclosure of the documents to the grand jury. By order dated March 22, 1980, this court stayed enforcement of the disclosure order pending an expedited appeal. Subsequent to oral argument, on motion of the attorney, we remanded the case, while retaining jurisdiction of the appeal, to permit the district court, in its discretion, to reconsider its decision in light of additional documents not previously available to it. The court reopened proceedings to consider the additional documents and has now certified to this court an opinion reaffirming its original determination.

## II. Jurisdiction.

Pursuant to 28 U.S.C. § 1291 we have jurisdiction of appeals from all "final decisions" of the district courts. The government contends that this court lacks jurisdiction and must dismiss this appeal because the January 28 order of disclosure is not such a final decision.[5] The traditional formulation of a final order is "one which

---

**3.** No useful purpose would be served by identifying the attorney or any of the other individual targets of the investigation at this time.

**4.** Subsequent to this order, on May 7, 1979, a third group of documents was obtained pursuant to a grand jury subpoena from Duane Frahm, Devine's successor as General Manager of BIC. These documents were also reviewed *in camera* by the district court.

**5.** The order is not appealable as an interlocutory order under 28 U.S.C. § 1292 since it is not the type of order for which interlocutory review is expressly authorized by § 1292(a), and Berkley did not move for certification pursuant to § 1292(b).

ends the litigation * * * and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 952 (8th Cir.), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979). Clearly the order appealed from does not meet this test. There is, however, a judicially-created exception to the finality doctrine which we hold applies to permit immediate appeal in this case.[6]

■ The district court's order rejecting Berkley's claim of privilege and ordering disclosure of documents to the grand jury is the functional equivalent of an order denying a motion to quash a grand jury subpoena. The general rule is that a person to whom a grand jury subpoena is directed cannot appeal from the denial of a motion to quash the subpoena, but must first refuse to comply with the subpoena and litigate his claims in contempt proceedings. *United States v. Ryan*, 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971); *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). *Contra, Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 996–97 (10th Cir.), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965).

A well-established exception to this rule, however, permits an individual claiming a privilege or other interest in subpoenaed documents to appeal from an order to produce directed to a third party custodian of the documents. The theory for allowing immediate appeal is that the appellant himself cannot resist compliance in order to obtain review in contempt proceedings, and the third party custodian cannot be expected to risk contempt to secure review on his

behalf. *United States v. Ryan, supra*, 402 U.S. at 533, 91 S.Ct. at 1582. The exception was first articulated in *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), and has since been invoked on numerous occasions. *E. g., In Re Matter of Grand Jury Applicants, C. Schmidt & Sons, Inc.*, 619 F.2d 1022, at 1024 (3d Cir. 1980); *In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672 (D.C. Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 800–01 (3d Cir. 1979); *In Re Faltico*, 561 F.2d 109, 110 n.2 (8th Cir. 1977); *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671, 674 (7th Cir. 1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); *United States v. Doe*, 455 F.2d 753, 756–57 (1st Cir.), *vacated on other grounds sub nom. Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583, *rehearing denied*, 409 U.S. 902, 93 S.Ct. 98, 34 L.Ed.2d 165 (1972). *See United States v. Ryan, supra* (recognizing *Perlman* rule). *But see In Re Oberkoetter*, 612 F.2d 15 (1st Cir. 1980); and *National Super Spuds v. New York Mercantile*, 591 F.2d 174 (2d Cir. 1979) (questioning the soundness of the *Perlman* rule and declining to follow it where the individuals subject to disclosure orders were, respectively, the attorney and employee of the entities seeking immediate review and could, therefore, be expected on their behalf to risk contempt to secure immediate review). *See generally* 15 C. Wright & A. Miller, Federal Practice & Procedure § 3914 at 567–77 (1976).

■ We believe Berkley's appeal from the district court's order of disclosure falls within the rationale of the *Perlman* doctrine and the authorities cited above. If the documents had been sought by grand jury subpoena directed to Berkley,[7] Berkley

---

6. The parties focus their arguments on the collateral order exception to the finality doctrine. Some courts have relied on the doctrine to permit appeal in analogous cases. *E. g., In Re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672 (D.C. Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979). *See Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir.), *cert. denied*, 380 U.S. 964,

85 S.Ct. 1110, 14 L.Ed.2d 155 (1965). Since we find a different exception supports this appeal, we pretermit discussion of the applicability of the collateral order doctrine.

7. We are aware that copies of some of the 19 documents which are the subjects of this appeal were obtained pursuant to a grand jury subpoena directed to a BIC officer in Taiwan.

could have protected its claim of privilege by refusing to comply and by appealing any order holding it in contempt. Instead, as a result of the disclosure by Divine and the seizure pursuant to search warrant, the allegedly privileged documents are presently in government custody. The disclosure order is not directed to Berkley. Berkley thus does not have the option of defying the order and securing appellate review in contempt proceedings. In these circumstances immediate appeal is authorized. *Perlman v. United States, supra.*

■ The cases cited by the government which hold orders denying motions to suppress nonappealable are simply inapposite. The district court expressly deferred ruling on Berkley's motion to suppress. 466 F.Supp. at 866–67. Moreover, a claim of illegal search and seizure, the basis of a Rule 41(e) motion to suppress, is not grounds for excluding evidence from the grand jury. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In contrast, the grand jury may not violate a valid claim of privilege. *Id.* at 346, 94 S.Ct. at 619. Finally, even a disclosure for limited purposes, as to the grand jury, necessarily impairs the confidentiality considerations which underlie the attorney-client privilege. There are therefore sound policy reasons for allowing immediate appeal of claims of privilege which do not necessarily apply in the context of motions to suppress. *But see In Re Oberkoetter, supra*, 612 F.2d at 17 (finding no strong reason for providing any form of review of claims of attorney-client privilege).

*See* note 4, *supra.* However, the record reveals that at least one copy of each such document, with one possible exception, was obtained independently of the subpoena. (For example, document 77 is the same as documents 149, 166, 170 and 213. Documents numbered 1–79 are Devine documents, 80–176 were obtained by the subpoena, and 177–264 were obtained by search warrant. Thus, copies of document 77 were obtained from Devine and by search warrant as well as by subpoena.) Therefore we do not need to decide whether Berkley's appeal as to documents obtained by subpoena should be disallowed on the theory that the BIC officer could have been expected to risk contempt on Berkley's behalf. *See In Re Oberkoetter*, 612 F.2d 15 (1st Cir. 1980); *National Super Spuds*

## III. The Attorney-Client Privilege.

In a memorandum opinion, sealed to protect the confidentiality of the ongoing grand jury investigation, the district court explained its decision that certain documents are not protected by the attorney-client privilege and may be disclosed. In summary, the court concluded (1) some documents "do not contain communications made to an attorney or his associate, or were not intended to be confidential"; (2) some documents "have been previously disclosed to an adverse party"; (3) some documents "are ordinary business records"; and (4) some documents "appear to have been prepared as part of a continuing fraudulent or illegal scheme." Berkley appeals only this last determination that certain documents fall within the crime and fraud exception to the attorney-client privilege. Although the opinion identifies 44 documents in this category, because of duplicate copies there are in fact only 19 documents at issue on appeal.

■ It is a well-established rule of common law that confidential communications between an attorney and his client are privileged and not subject to compelled disclosure absent consent of the client.[8] *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977); *Pfizer, Inc. v. Lord*, 456 F.2d 545, 548 (8th Cir. 1972). Moreover, it is clear that a valid claim of privilege protects against disclosure even to the grand jury. *United States v. Calandra*,

*v. New York Mercantile*, 591 F.2d 174 (2d Cir. 1979).

The one possible exception is document 155, which may or may not be the same as 237. In view of this ambiguity in the record and in view of the relative insignificance of the document in the context of the whole appeal, we decline to treat it separately.

8. In the absence of a relevant Supreme Court rule, federal statute or constitutional provision, questions of privilege are governed by the common law as interpreted by federal courts. *United States v. Calvert*, 523 F.2d 895, 909 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); Fed.R.Evid. 501.

*supra*, 414 U.S. at 346, 94 S.Ct. at 619. There is, however, an equally well-established exception to the privilege. Attorney-client communications lose their privileged character when the lawyer is consulted not with respect to past wrongdoings but rather to further a continuing or contemplated criminal or fraudulent scheme. *In Re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977); *United States v. Calvert*, 523 F.2d 895, 909 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *Pfizer, Inc. v. Lord, supra*. *See Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). "The privilege takes flight if the relation is abused." *Id.* *See generally* C. McCormick, *Law of Evidence* § 95 (Cleary ed. 1972); 8 Wigmore on Evidence § 2298 (McNaughton Rev. 1961); J. Gardner, *The Crime or Fraud Exception to the Attorney-Client Privilege*, 47 ABAJ 708 (1961).

The government is not required to prove the existence of a crime or fraud in order to overcome a claim of privilege. Rather, a prima facie showing that the legal advice was obtained in furtherance of illegal or fraudulent activity is sufficient to secure disclosure. *Clark v. United States, supra; In Re Murphy, supra; United States v. Bob*, 106 F.2d 37, 40 (2d Cir. 1938), *cert. denied*, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939). The determination that a prima facie showing has been made lies within the sound discretion of the district court. That determination may not be disturbed on appeal absent an abuse of discretion. *In Re Special September 1978 Grand Jury*, No. 79–1218 (7th Cir. Apr. 30, 1980); *In Re September 1975 Grand Jury Term*, 532 F.2d 734, 737–38 (10th Cir. 1976).

After *in camera* examination of several hundred documents the district court found there was prima facie evidence that the 19 documents now at issue related to efforts on the part of Berkley and BIC officials to implement and to avoid detection of various illegal and fraudulent schemes, and prima facie evidence of some involvement by the attorney in such conduct. Accordingly, the court ruled the documents were not privileged and ordered their disclosure. Discussion of the various activities identified by the district court as prima facie criminal or fraudulent would serve no useful purpose here. It suffices that our own independent *in camera* review of the disputed documents and all of the other documents made available to this court on appeal, including the documents recently submitted by the attorney, reveals no abuse of discretion in the district court's determination.

Berkley makes two distinct arguments that the district court erred in ruling the disputed documents not privileged.[9] First, Berkley correctly observes that legal advice rendered a client with respect to past wrongdoing remains privileged. Berkley contends that the disputed attorney-client communications at most reflect legitimate efforts to minimize disclosure of and liability for past misconduct, and do not reveal contemplated future misconduct. This argument merely disputes the district court's interpretation of the considerable evidence before it. As indicated, from our review of the record on appeal we cannot say the district court abused its discretion in finding prima facie evidence that Berkley intended future illegal or fraudulent conduct.

**9.** In a brief footnote Berkley also contends that the prima facie showing of crime or fraud must be based on evidence exclusive of the disputed documents themselves, *citing United States v. Shewfelt*, 455 F.2d 836, 840 (9th Cir.), *cert. denied*, 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972). ("[B]efore the privileged status of these communications can be lifted, the government must first establish a prima facie case of fraud independently of the said communications.") The cases relied on in *Shewfelt* to support this proposition simply state the requirement of a prima facie case and do not support the independent evidence restriction. *E. g., Union Camp Corp. v. Lewis*, 385 F.2d 143 (4th Cir. 1967). Several courts have implicitly approved examination of the documents themselves as a means of establishing the requisite prima facie showing. *See, e. g., In Re Special September 1978 Grand Jury*, 619 F.2d 1022, at 1027, 1028 (7th Cir. 1980); *Union Camp Corp. v. Lewis, supra*, 385 F.2d at 144. This court has endorsed *in camera* review of allegedly privileged materials for purposes of determining a claim of privilege in another context. *In Re Fish & Neave*, 519 F.2d 116 (8th Cir. 1975).

Berkley's second argument is somewhat more troublesome. Berkley contends the crime of fraud exception does not apply in this case because the district court's findings of criminal or fraudulent activities involve different crimes from that now under investigation. This argument is derived from *Alexander v. United States*, 138 U.S. 353, 11 S.Ct. 350, 34 L.Ed. 954 (1891), in which the Supreme Court suggested that the crime of fraud exception will overcome a claim of attorney-client privilege only at trial for the specific crime in furtherance of which the allegedly privileged communication was made. *Id.* at 359–60, 11 S.Ct. at 352. Presumably, the privilege is retained for all other purposes. In the present case, the district court found prima facie evidence that the disputed communications involved contemplated violations of the laws of Taiwan and fraudulent misrepresentations to the Taiwanese government. Since the court did not specifically find the communications were made in furtherance of United States customs violations, the subject of the grand jury investigation, Berkley contends the crime or fraud exception cannot be invoked to defeat the privilege in the present proceedings.

■■■ The limitation stated in *Alexander* has neither been followed nor overruled. Assuming, *arguendo*, that the rule is good law, it does not apply on these facts. The record reveals that the same intercompany transactions were a part of both the violations of Taiwanese law identified by the district court and the alleged United States customs violations presently under investigation. The district court found that Berkley's United States and Taiwan legal problems were "complex and intertwined." Given this close factual relationship, many of the disputed communications were necessarily made in furtherance of the alleged ongoing customs fraud as well, and Berkley's claim of different crimes is undermined.[10]

Moreover, the suggestion in *Alexander* that the privilege is lost only at the trial for the crime in furtherance of which the communication was made has been characterized as dictum[11] and explicitly rejected by one court, *In Re Sawyer's Petition*, 229 F.2d 805, 808–09 (7th Cir.), *cert. denied*, 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956), and has been much criticized by commentators. *See* 8 Wigmore, *supra*, at 571 n.1 (the "distinction is groundless, upon either principle or precedent"); C. McCormick, *supra*, at 199 n.45; Note, 45 Cal.L.Rev. 75 (1957). Indeed, the Supreme Court cited no authority and offered no rationale for its limitation of the exception.

Nor do we discern any policy reason in support of the limitation. The purpose of the privilege is to encourage the client to make full disclosure to his counsel so as to ensure competent and ethical representation. *In Re Grand Jury Proceedings (FMC Corp.)*, *supra*, 604 F.2d at 802. *Accord*, *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976); *In Re Murphy*, *supra*, 560 F.2d at 337. Since,

10. In contrast, in *Alexander*, the attorney was consulted only *after* commission of the murder for which defendant was tried. 138 U.S. at 360, 11 S.Ct. at 352. Thus there is no way that the defendant's communications to the attorney could have been construed to be in furtherance of that crime.

11. This characterization is arguably correct. In *Alexander* the defendant was convicted of the murder of his business partner. At trial, apparently for impeachment purposes, 138 U.S. at 360, 11 S.Ct. at 352, an attorney was permitted to testify that sometime between the disappearance of the partner and discovery of his body the defendant contacted the attorney, advised him that the partner was missing along with some partnership money, and inquired whether he could hold some horses owned by the partnership to secure his share of the missing money. The Supreme Court held the communication privileged and reversed the conviction. The basis for the decision is somewhat obscure. The Court noted that the client's communication with the attorney was harmless on its face and did not necessarily relate to any future intended wrongdoing. *Id.* at 358, 360, 11 S.Ct. at 351, 352. In the absence of evidence that the communication was in furtherance of any crime or fraud, there was no reason for the Court even to consider the crime or fraud exception to the privilege, or to create the questionable limitation in order to distinguish cases relying on the exception to overcome the privilege.

however, the privilege operates to withhold relevant information from the fact finder, it should be applied only when necessary to achieve its purpose. *Fisher v. United States, supra.* The reasons for the privilege "all cease to operate * * * where the desired [legal] advice refers *not to prior wrongdoing, but to future wrongdoing.*" *In Re Murphy, supra,* 560 F.2d at 337, *quoting* 8 Wigmore, *supra,* at 573 (emphasis in original). When the attorney-client relationship has been thus abused we perceive no justification for sustaining the privilege in any context. Our research has disclosed no decision subsequent to *Alexander* directly supporting its rule.[12] We agree therefore with the Seventh Circuit that attorney-client communications "in pursuit of a criminal or fraudulent act yet to be performed [are] not privileged in *any* judicial proceeding." *In Re Sawyer's Petition, supra,* 229 F.2d at 808–09 (emphasis added).

For the foregoing reasons we find no abuse of discretion in the district court's rejection of Berkley's claim of attorney-client privilege. Accordingly, we affirm the court's order requiring disclosure of the documents to the grand jury, subject, however, to the following qualifications.

(1) We emphasize the very limited effect of this decision. The determination that the documents are not privileged pertains only to the grand jury proceedings. If indictments are returned and the matter proceeds to trial, Berkley and any individual defendants are free to reassert their claims of privilege to prevent use of the documents at trial. The ultimate question of the relevance and admissibility of the documents at trial may then be determined, but only after all parties have had an opportunity to be heard. The district

court's determination that there was prima facie evidence of criminal or fraudulent activity was based solely on the documents before it. The potential defendants have had no opportunity to challenge this evidence or to present contrary evidence which may show events in a different light. In these circumstances, the district court's preliminary determination that the documents are not privileged before the grand jury is not binding on the parties at any subsequent trial.

(2) The district court's determination that there was prima facie evidence of criminal or fraudulent activity was for the sole purpose of ruling on Berkley's claim of privilege and can have no further relevance for the grand jury investigation. Accordingly, when the documents are presented to the grand jury, the government attorney is directed not to make any reference to the fact the documents have been determined to be outside the attorney-client privilege because of the crime or fraud exception, or any other comment whatsoever concerning what the district court or this court has said about the documents.[13]

The district court's orders and opinions are hereby amended to be consistent with the above limitations.

*IV. The Devine Documents.*

Berkley requests this court to order the government to disclose to Berkley the Devine documents, contending that disclosure is essential to effective assertion of its claim of privilege. We disagree. In the first place, it is doubtful that the issue is properly before us on this appeal. The district court denied Berkley's motion for disclosure of the Devine documents in its order of March 1979, concluding the motion was

---

12. There are some cases which include the *Alexander* limitation in articulating the basic crime or fraud exception to the attorney-client privilege. *E. g., Pollock v. United States,* 202 F.2d 281, 286 (5th Cir.), *cert. denied,* 345 U.S. 993, 73 S.Ct. 1133, 97 L.Ed. 1401 (1953); *United States v. Bob,* 106 F.2d 37, 40 (2d Cir.), *cert. denied,* 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939). These cases, however, involved allegedly privileged communications made in furtherance of the crime for which the client was

charged and application of the privilege did not turn on the *Alexander* rule. We are aware of no case invoking *Alexander* to hold communications otherwise subject to the crime or fraud exception privileged because offered in an unrelated judicial proceeding.

13. Counsel for the government assured this court at oral argument that this direction would be observed.

merely a request for "pre-indictment discovery of the government's file." *In Re Grand Jury Proceedings Involving Berkley & Co., supra,* 466 F.Supp. at 867. Denials of motions for discovery are normally not appealable, and, in any event, Berkley's appeal on this issue is untimely, coming as it does more than a year after denial by the district court. Moreover, we fail to see how nondisclosure has prejudiced Berkley's claim of privilege with respect to the Devine documents. If it feared the district court erred in ruling the documents not privileged, Berkley could have secured appellate review simply by appealing the district court's decision as to each document. It did not choose to do so. Finally, the government assured this court at oral argument that there will be a fully open file if and when indictments are returned.

### V. The Government's Motion to Disqualify Berkley's Counsel.

▉ The government raised for the first time on appeal an alleged conflict of interest on the part of the law firm retained to represent Berkley in the grand jury proceedings and on this appeal, moving this court to disqualify the firm. By order dated July 15, 1980, we denied the motion for disqualification and directed the government to present the question to the district court on the remand then in effect. By order of August 7, 1980, the district court ruled that the law firm shall be disqualified unless Berkley agrees to waive, on the record, the potential conflict of interest. We decline to disturb this well-reasoned ruling. Any disqualification shall not, however, be effective retroactively.

The district court's orders requiring disclosure of documents to the grand jury are affirmed as qualified by this opinion.